No. 4888.

(Court of Appeal, Parish of Orleans.)

**N. O. TRANSFER CO., W. C. FAUST, PROP. vs. N. O. R. & L. CO. AND SYLVIAN ANTOINE.**

G. B. Smart, E. A. Parsons for plaintiff and appellee.

Dart & Kernan for defendant.

John J. McCloskey and John Wagner for defendant and appellant.

DUFOUR, J.—This cause comes to us with the following opinion and decree:

"This is an action for the recovery of $150.00 damages for the loss of a horse. The plaintiff alleges, in substance, that on Saturday morning September 19, 1908, a horse

belonging to him, whilst being driven down Dauphine Street opposite the building bearing the Number 237, stepped into a hole between the rails, and adjoining the right-hand rail of the defendant company's track, catching his right hind foot and tearing away his hoof, which remained in the cavity, thereby necessitating his immediate destruction; that said accident was due to the bad condition of the roadway, owing to the negligence of the defendants; that defendant, Sylvian Antoine, a short time prior to the accident, had torn and excavated the street at the spot designated, in order to do some plumbing work, but failed and neglected to place the street back in good condition.

"The Railway Company denies generally plaintiff's averment; and specially alleges that the condition of the street at the point and on the day of the accident was caused by the acts of third persons, over whom it had no control or authority; that it is not its duty to maintain and keep in repair the street on which the accident occurred, but that said duty rests upon the Barber Asphalt Company, or, upon the City of New Orleans; that, furthermore, the accident was due to the carelessness and incompetency of plaintiff's driver.

"Slyvian Antoine, the other defendant, in his answer says, in substance, that he is a licensed plumber in this city; that on September 5, 1908, under authority from the City of New Orleans and the Sewerage Board, he excavated Dauphine Street at the point stated, for the purpose of making connections with the water mains of the city; that he finished the said work late in the evening of September 9, 1908, when he immediately restored the street in a good and safe condition; that on the morning of September 10, 1908, he notified the Barber Asphalt Company, which has a contract with the city to maintain and repair in good order Dauphine Street, between

Canal and Toulouse Streets, up to 1911, to re-asphalt and re-lay said street where he had made the excavation; that he left the street in good condition, and if it was not in a safe condition for traffic at the time of the accident (which he denied), that it was not through his fault; that there was an unusual rainfall throughout the night previous to the accident, and if there was a cavity in the street because of the sinking of the Belgian blocks between the rails of the Railway Company's track, it was caused by the act of God. He also avers that the accident was due to the negligence and carelessness of plaintiff's driver.

"The evidence shows that on the day stated, an omnibus used by plaintiff for the transportation of passengers to and from railroad stations in this city, and drawn by two horses, was moving towards Esplanade Avenue in the car track of the defendant Railway Company, on Dauphine Street, when, on nearing the building bearing the Municipal Number 237, near Bienville Street, one of the horses caught his right hind foot in a hole inside of the track, between the flange of the rail and the Belgian block. The horse fell, pulling off his hoof, which remained in the hole. His injury was so severe that Dr. E. A. White, the well-known veterinarian, who was immediately summoned, found it necessary to destroy him, with the assistance of an employee of the S. P. C. A.

"The horse at the time of the accident was being driven at a slow trot. It had rained heavily during the preceding night, and it was still raining on that morning. The street, and particularly the track, were covered with water so that the driver could not detect the cavity. There was no warning or signal of danger.

"Up to Sept. 8, 1908, previous to the accident, Dauphine Street, which is paved with asphalt—save the space occupied by the Railway Company's track, and a further space of fifteen inches outside of the rails on either side

which is paved with Belgian blocks, was in perfect condition. On that day defendant, Antoine, cut the asphalt and removed the Belgian blocks for the purpose of changing the water service of premises No. 237 from the old to the new mains. He did so by virtue of a permit obtained from the City of New Orleans, and containing, inter alia, the following:

"The said Mr. S. Antoine further binds himself to restore the pavement or roadway disturbed to its original good order and condition, and to keep same in good order and condition for the term of one year.

"The said Mr. S. Antoine further binds himself to abide by the provisions as established in Ordinance No. 2831, N. C. S.

"The estimated cost for replacing the pavement for which this permit is issued will be five dollars, which amount the said Mr. S. Antoine shall deposit with the City Treasurer, and this permit to have the City Treasurer's receipt before becoming operative.

"Pavement of Dauphine Street constructed by the Barber Asphalt Company, the maintenance of which is still owed the City of New Orleans by said Barber Asphalt Company and it is advisable that the repairs be made by same.

"Antoine finished his work on the evening of September the 9th, and packed the earth and debris of asphalt firmly and compactly into the excavation he had made, and replaced as close together as he could the Belgian blocks which had been removed. It was raining at the time. The next morning, September 10th, Antoine, being dissatisfied with the appearance of things after the rain, had his employees "to re-dam the earth and re-fix the street," and left the filled excavation in an apparently safe and firm condition. He at the same time requested the Barber Asphalt Company, in writing, to restore the street to its former condition, but his request remained

unheeded until some time after the accident.

"The Railway Company was requested by no one to repair the cut.

"The evidence further shows that under its franchise from the City of New Orleans the Railway Company is bound to keep in good condition Dauphine Street from Canal to Toulouse Streets.

"It also appears that the Barber Asphalt Company is under contract with the city to maintain in good condition the asphalt and Belgian block pavement on Dauphine Street until the year 1911.

"Under the facts stated, the liability of Antoine is clear. But it does not proceed from the stipulation in the city's permit to the effect that he shall restore the street at the place cut to its former good condition and keep it in repair for a year thereafter. The permit also states that it is advisable that the repairs be made by the Barber Asphalt Company, which constructed the pavement, and is still bound for its maintenance. That clause in the permit, read in connection with Ordinance No. 2, 831 N. C. S., in conformity to which it was issued and according to which it must be construed, means that the repairs must be made by the Asphalt Company.

"The ordinance is entitled "**An ordinance regulating and governing cuts through roadways or streets, and providing for the replacement of pavements disturbed**," and the pertinent provisions are:

"Section 2. Be it further ordained, etc., That any party or parties desiring to open or cut through the roadway of any paved or unpaved street, shall make application to the Commissioner of Public Works for a permit to do so, and upon receipt of an application, the Commissioner of Public Works shall make an estimate of the cost required to replace the roadway opened or cut through in its original condition, and

— 238 —

place the amount of said estimated cost on the face of their permit. The party or parties securing this permit from the Commissioner of Public Works shall, before beginning work, deposit with the Treasurer of the City of New Orleans the amount stated on the face of the permit as being necessary to replace the roadway opened or cut through, in its original condition and no permit shall become operative until such deposit has been made and the Treasurer of the City of New Orleans has certified to the same on the face of the permit.

"Section 3. * * * He or they shall use every care to replace the excavated earth in a firm, solid, compact manner. * * *

"Section 6. Be it further ordained, etc., That on the passage of this Ordinance the Commissioner of Public Works shall request all contractors on paved streets on which the contractor's guarantee on the pavement has then expired, to furnish him with the price per square yard for the replacing of the pavement, together with any incidental expenses attached to said replacing of the pavement, which information the Commissioner of Public Works shall keep on record in his office, and make his estimate of the amount necessary to be deposited therefrom.

"Section 7. Be it further ordained, etc., That whenever a permit is issued to open or cut through a roadway on any paved street on which the contractor's guarantee on the pavement has not expired, the Commissioner of Public Works shall at once notify the contractor who has the pavement under guarantee to make the necessary repairs as soon as possible, and to present his bill to him for approval; it being understood that said contractor shall have the right to charge for said repairs at the same rate

as furnished the Commissioner of Public works.

"When permits are issued for opening or cutting through the roadway or any paved street on which the contractor's guarantee has expired, the Commissioner of Public Works shall order the parties securing the permit to replace the pavement at his own expense, and if the party securing the permit shall not repair the roadway within ten days after being ordered by the Commissioner of Public Works, he shall have the power to order the paving done by such party or parties as he may deem to the best interests of the city." * * *

"There can be no doubt, under this last section, that it is only where the paving contractor's guarantee has expired, that the duty is imposed upon the person who has been permitted to cut the pavement to replace it at his own expense. When, as in this case, the guarantee has not expired, the pavement must be restored by the contractor who is to be compensated therefor by the city, out of the deposit in its hands.

"That the permit seeks to fasten upon Antoine the replacing of the pavement, is explainable by the fact that it is under a blank form evidently intended for use in all cases, whether of unpaved streets, or of paved streets, with or without a subsisting maintenance guarantee, and necessarily containing inconsistent clauses which were overlooked by the person who issued the permit.

"The permit, however, as already stated, is controlled by Ordinance No. 2, 831 N. C. S., to which it refers and under which it was issued, and in so far as it attempts to obligate Antoine to repair the street is of no effect.

"But it does not follow that because there was no obligation on his part, quoad the city, to replace the pavement which he had disturbed, he incurred no liability to plaintiff. Such liability exists independently of any contrac-

— 240 —

tual relation between him and the city. It arises out of the right of the public to the safe use of the streets. Whoever interferes with that right by cutting or excavating the roadways or streets, becomes responsible for the resulting damages.

"Antoine contends, however, that although he did not restore the pavement, he left the street in a safe condition, and that it was the hard rain of the night before the accident which caused the earth in the compactly-refilled excavation to sink. He quotes from a note at the foot of page 427 of Vol. 41 of the American Ency. of Law, "that a person rightfully excavating a trench and refilling it as compactly as possible, is not liable for injuries due to natural and inevitable settling of the soil with which he had refilled the trench." That may be true of excavations in **unpaved** streets, where the refilling of the trench as compactly as possible is all that is needed to restore the street in its former condition; but that cannot apply to **paved** streets.

"Moreover, defendant, Antoine, knew by experience that rain was apt to cause the soil of that particular refilled excavation to sink, and should have warned the public of the danger by some light or notice at the spot.

"Antoine must, therefore, indemnify plaintiff to the extent of $150.00, the value of the injured horse.

"As to the other defendant, the New Orleans Railway & Light Company, its obligation, under its franchise from the city, to keep in good order, and repair Dauphine Street and the other streets on which its tracks are laid extends only to such repairs as are necessitated by the wear and tear of traffic or natural causes. It does not include the relaying of perfectly good pavement which has been cut and torn up by third persons with or without the permission of the city.

"It is therefore ordered, adjudged and decreed, that

plaintiff, the New Orleans Transfer, William C. Faust, proprietor, have judgment against defendant, Sylvian Antoine, in the sum of one hundred and fifty ($150.00) dollars, with legal interest from October 19, 1908, until paid, and costs.

"It is further ordered, adjudged and decreed, that plaintiff's demand against defendant, the New Orleans Railway & Light Company, be rejected at his costs."

After careful examination of the record we do not find it necessary to add anything to the foregoing, which we approve and adopt as the opinion of this Court.

Judgment affirmed.

February 9, 1910.

Rehearing refused February 21, 1910.